SAFETY CAR HEATING & LIGHTING CO. v. UNITED STATES LIGHT
& HEAT CORP.

(District Court, W. D. New York. February 15, 1916.)

PATENTS ⊜⟶301(1)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.
    Motion for a preliminary injunction to restrain infringement of the
    Creveling patent, No. 747,686, for a car-lighting system, denied on the
    ground that the showing made leaves the question of infringement in
    such doubt that it should only be determined on a full hearing.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 489, 493; Dec.
    Dig. ⊜⟶301(1).]

In Equity. Suit by the Safety Car Heating & Lighting Company
against the United States Light & Heat Corporation. On motion for
preliminary injunction. Denied.

Duell, Warfield & Duell, of New York City, for plaintiff.
Jones, Addington, Ames & Seibold, of Chicago, Ill., for defendant.

HAZEL, District Judge. Motion for preliminary injunction in an
action for infringement of the Creveling patent No. 747,686, for a car-
lighting system—one employing an axle-driven dynamo in connection
with a storage battery, and electrical regulation in supplying current
to the lamps. The said patent was involved in an earlier litigation be-
tween the complainant and the United States Light & Heating Com-
pany, defendant's predecessor, and was held valid and infringed by the
adaptation of the so-called stop charge and taper charge apparatus. 222
Fed. 310, affirmed 223 Fed. 1023, 138 C. C. A. 651. In view of the
novelty of the invention and its mode of operation, the claims involved.
in the earlier litigation, which included claims 3, 4, and 8 herein relied
upon, were accorded a liberal construction, and were not limited to the
specific means described for operating the invention.

At the accounting proceeding, which followed, it appeared that the
defendant's predecessor had modified its car-lighting systems and add-
ed to them an ampere hour meter, the invention of Wm. L. Bliss, as-
signor of defendant. Complainant, claiming that such modifications
and changes were colorable and evasive of the adjudicated stop charge
and taper charge systems, moved to enlarge the accounting to include
them; but upon objection by defendant the court held that the better
practice required filing an original bill alleging infringements. This
suit was thereupon instituted, and motion made to enjoin the manufac-
ture and sale of the so-called first and second ampere hour systems
marketed by defendant's predecessor and third ampere hour system
manufactured by the defendant.

The claims in issue broadly include means for maintaining the out-
put of the dynamo practically constant throughout changes in speed;
(3) electro-magnetic means for determining the output to be maintain-
ed; (4) means for holding current output practically constant; and (8)
a regulating device for regulating the output of the dynamo, and sup-

plemental means for controlling the regulating device to determine the output. The specification and claims cover (a) a system of control and regulation for maintaining constant dynamo output, regardless of the lamp load and variations in train speed until the storage battery becomes charged; and (b) automatic means which then come into play to reduce the output and prevent the battery from being overcharged. The specific means for accomplishing the result need not be here stated, as they are set forth in the reported opinion in the prior litigation. It should, however, be understood that the patentee adapted a regulating coil in series with the main lead to regulate and control the current passing to the battery and lamps.

In the prior litigation we were concerned with apparatus wherein the dynamo output was held constant until the protecting means required a lower standard or rate of output, namely, when the storage battery became fully charged. Defendant has included in its combination a regulating coil, positioning it, however, in the battery circuit, and not, as in complainant's patent, in series with the main circuit. By reason of such arrangement of the regulating coil, according to defendant, a constant battery charging current is obtained with lamp load changes in the dynamo output only, as distinguished from a constant dynamo output, regardless of any variations in train speed or lamp load. Defendant also urges that the battery voltage in its apparatus does not govern or control the current reduction, but that it depends on the quantity of current supplied to the battery, and contends that the operation of its apparatus is widely disparate from complainant's.

It may be true, as testified by Hammer, that the regulator coil of defendant's apparatus operated to maintain a constant current supply to the battery throughout changes in train speed, owing to the disconnection of the wire conductor leading to the main switch 16 and its connection with the lower side of the current coil; but at least five witnesses for defendant have testified that this did not produce or maintain a constant current supply to the battery through variations of lamp load, and have denied that the telegraphic relay interposed in one system was capable of easily producing constant dynamo output, or that the quantity was diminished by the adjustment of a screw when the voltage rose, and the battery thus protected.

It is true that the indicated differences of construction are not of material importance if they relate simply to details of operation, as the patent in suit was accorded a broad construction in the prior litigation, owing to the original adaptation by Creveling of what was believed to be a new and novel principle of operation in car lighting; but the scope of the claims does not control this application, unless the defendant's apparatus is operated upon the Creveling principle. The opposing affidavits require something more than a mere ascertainment of whether by its modification the defendant is endeavoring to evade infringement by a colorable device. The stop charge and taper charge systems have been abandoned; and defendant claims to have embodied in its present structure only the essential elements of two prior McElroy patents, Nos. 720,609 and 893,533, respectively, to which was add-

ed the ampere hour invention for battery protection, and that in such prior patents the means for regulation consisted essentially of a voltage or potential regulation, not of a constant generator output regulation during speed variations.

The argument is that the complainant's and defendant's systems are operated upon entirely different principles, and are in fact opposites. Indeed, four witnesses for defendant, skilled and trained in the art, Bliss, Lunn, Turbayne, and Professor Kennelly (some of whom have been granted patents for car axle lighting systems), swear positively that there are essential differences in the principles and modes of operation of the systems under consideration, and the reasons for their conclusions are stated with considerable detail. Under the circumstances, then, and without regard to the prior adjudication, I have a serious doubt as to whether defendant's systems, as now arranged and operated, are infringements. I may state, however, that any doubt I entertain is based chiefly upon the showing that defendant's apparatus is adapted to the disclosures of the McElroy patents, with the addition of the Bliss ampere hour meter.

The contention of complainant has not been overlooked that defendant does not in fact manufacture its apparatus under the McElroy patents; that it has departed from the feature of constant voltage during battery charging, and instead utilizes constant current during battery charging; and that it has departed substantially from the second McElroy patent. But, in view of the conflict that has arisen between complainant's expert witness and the defendant's witnesses, I am constrained to ignore this assertion. Besides, the case is one involving a difficult and abstruse question, and before enjoining the structures, as requested, I think I should have the benefit of the examination and cross-examination of witnesses at final hearing, to the end that the testimony in its entirety may be considered and weighed.

The motion for a preliminary injunction is denied.